# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 16-0127-WS |
| | ) | |
| CHARLES LEONARD LETT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on the Motion to Suppress Evidence and Statements (doc. 17) filed by defendant, Charles Leonard Lett, Jr. The Motion has been briefed and is now ripe for disposition.[1]

## I. Background.

The four-count Indictment charges Lett with possessing with intent to distribute crack cocaine and powder cocaine, in violation of 21 U.S.C. § 841(a)(1); using, carrying and possessing a loaded Glock, Model 26, 9mm handgun, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (*See* doc. 1.) All of these charges arise from a traffic stop initiated by the Selma Police Department in Selma, Alabama, at approximately 11:22 p.m. on November 30, 2015.

The Government's narrative of the incident, culled predominantly from the police report, includes the following pertinent facts: Selma police officers traveling westbound on 1st Avenue

---

[1] No party has requested an evidentiary hearing. Indeed, defendant expressly indicates in the Motion that he does not seek a hearing because he is relying on a DVD exhibit containing audio and video of the subject incident as recorded on a body camera worn by one of the arresting law enforcement officers. Where, as here, the parties' briefs do not identify any disputed issues of fact requiring resolution via evidentiary hearing, no hearing is needed. *See, e.g., United States v. Horne*, 2006 WL 2668919, *5 (11th Cir. Sept. 18, 2006) (district court properly decided motions to suppress without a hearing where "Horne's motions presented issues of law, not fact," and "[n]either motion raised a disputed issue of fact that required resolution in an evidentiary hearing").

near Franklin Street observed a black Nissan Maxima in the eastbound lane swerve into the westbound lane as it approached their vehicle. (Doc. 24-1, at 1.) The officers activated their blue lights and attempted to initiate a traffic stop of the black Nissan; however, that vehicle continued onward for several blocks, making multiple turns, before pulling over in a yard in a residential area on Eugene Avenue. (*Id.*) Defendant alleges that he selected that location because one of the houses adjacent to that yard belonged to the grandmother of a friend of his, and he wanted to stop in a place where he knew somebody.

A few seconds before Lett turned and parked on Eugene Avenue, one of the officers activated his body camera, providing audio and video evidence of what happened next.[2] The video begins just as the black Nissan begins to execute a right turn into the yard on Eugene Avenue. The officers are heard commenting that the driver might be "ready to bail," apparently meaning flee on foot, after which they emerge from their patrol vehicle quickly with guns drawn. The Nissan's driver, later determined to be defendant Charles Leonard Lett, Jr., had already exited his vehicle. As the officers approached, they loudly and repeatedly instructed Lett to show them his hands and to place them on his vehicle. He complied, then asked if he had done something wrong. The officers are heard explaining that Lett had failed to signal before turning at a stop sign. It appears that they also notified Lett that he had swerved his vehicle into the oncoming lane, inasmuch as Lett is heard on the video making the comment, "I know I dodged a little pothole, but that was all."

Lett had locked the car doors when he exited the black Nissan. Nonetheless, when the officers shined their flashlights into the vehicle, they observed a handgun in plain view wedged between the driver's seat and the center console.[3] Indeed, before entering the black Nissan, opening the doors or conducting any kind of vehicle search, the officers repeatedly asked Lett if

---

[2] A copy of that recording is in the record, as Lett filed a DVD containing that recording contemporaneously with his Motion to Suppress. (*See* doc. 18.) The Court has reviewed the 23-minute video in its entirety. As noted, however, only the first few seconds of the DVD depict the officers' pursuit of the black Nissan. The overwhelming majority of the video documents the events that transpired following the traffic stop, rather than the events culminating in that traffic stop.

[3] The police report indicates that the officers also observed in plain view a clear plastic bag containing marijuana in the driver's side door. The video includes numerous comments by the officers about the bag of marijuana.

he had a permit for the gun. When Lett did not answer, the officers asked why he was shaking. The officers then placed Lett under arrest and handcuffed him. A full interior search of the vehicle ensued, resulting in seizure of the firearm (the Glock 9mm referenced in the Indictment); the bag of marijuana (4.1 grams); several bags containing crack cocaine (48.7 grams), powder cocaine (129.8 grams), and pills; and a digital scale and marijuana grinder. When the officers ran the serial number of the Glock, it came back as having been reported stolen by the Decatur Police Department in March 2015. A search of Lett's person revealed that he was carrying $679 in cash in his left front pocket.

Lett was taken into custody and issued citations for improper lane usage and failure to signal. Subsequently, he was indicted in this District Court on firearms and narcotics charges. Lett now seeks to suppress the fruits of the traffic stop, including the items seized during the vehicle search and his statements to law enforcement officers, as violative of his Fourth Amendment rights. The gravamen of the Motion to Suppress is Lett's contention that the Selma police officers lacked probable cause to conduct the traffic stop in the first instance.

**II.  Analysis.**

It is well-settled that "[a] traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, --- U.S. ----, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014). As a general proposition, a traffic stop comports with the Fourth Amendment "where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also United States v. Pierre*, --- F.3d ----, 2016 WL 3254027, *4 (11th Cir. June 14, 2016) ("Pursuant to the Fourth Amendment, police may stop a vehicle if they have probable cause to believe that a traffic violation has occurred."). "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials … are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *United States v. Jimenez*, 780 F.2d 975, 978 (11th Cir. 1986) (citation and internal quotation marks omitted).

Under Alabama law, it is a traffic violation to fail to maintain one's lane or to fail to signal before turning right or left. *See* Ala. Code §§ 32-5A-88(1) ("[a] vehicle shall be driven as nearly as practicable entirely within a single lane"), 32-5A-133(a) ("[n]o person shall turn a vehicle or move right or left upon a roadway … without giving an appropriate signal"). The

Government's evidence is that Selma Police Department officers initiated a traffic stop of the black Nissan Maxima driven by Lett after observing the vehicle swerve into the oncoming lane. In the body cam video, Lett himself acknowledges having swerved to "dodge[] a little pothole." Additionally, the officers on the video are repeatedly heard indicating that Lett had failed to signal before turning. Either of these traffic infractions – which the officers witnessed firsthand – would have sufficed to give rise to probable cause for the subject traffic stop.

Defendant's sole argument to the contrary is that the video does not show either traffic infraction. In particular, Lett argues that the video establishes that the officers first "activated their lights and sirens while behind Lett," such that he could not have swerved into their path; that "there is no evidence on the video that he swerved;" and that "the video fails to show … that there was no signal light employed." (Doc. 17, at 6.) Defendant's argument thus appears to be that the traffic infractions must not have taken place because they were not recorded on video. But that is not the governing legal standard. Law enforcement officers are not constrained to initiate traffic stops only after capturing video evidence of a lane violation or failure to signal before turning.[4] The evidence supporting the existence of probable cause to believe a traffic violation occurred consists of the officers' eyewitness observations of the black Nissan swerving into the westbound lane on 1st Avenue and failing to signal thereafter. The validity of this evidence is corroborated by Lett's admission on the video that he had swerved to dodge a pothole, and the officers' repeated, emphatic statements on the video that Lett had not signaled before turning.

In the face of the Government's evidence supporting the existence of probable cause to conduct the traffic stop, defendant has not presented a conflicting narrative that might create a

---

[4] Part of the problem here is that there is some confusion about what the video evidence does and does not represent. As noted *supra*, the only video evidence in the record consists of footage from a body camera worn by one of the Selma police officers involved in the stop. That body camera does not purport to record the officers' initial observations of the black Nissan swerving across its lane or failing to signal; rather, it appears to have been activated mere seconds before Lett parked the Nissan in the yard on Eugene Street. There is no dash-camera footage of this encounter, an omission which the Government explains by stating that the patrol vehicle dash camera video failed to transfer to the Selma Police Department server, such that law enforcement officers have been unable to locate any such video. Thus, the only extant recording of these events is the officer's body camera footage capturing the last few seconds before Lett parked his car, and approximately 22 minutes of investigation at the scene thereafter.

credibility dispute and warrant an evidentiary hearing. Instead, he has simply pointed out that the body camera video does not depict any such traffic violations. The logical counterargument to defendant's position is that of course the video evidence does not capture Lett's traffic infractions because the officer's body camera was not activated until Lett was about to stop and the officers were about to engage him. The mere absence of a video recording of the subject traffic infractions, without more, neither negates the presence of probable cause for conducting the traffic stop nor otherwise gives rise to a Fourth Amendment violation.

## III. Conclusion.

For all of the foregoing reasons, the Court concludes that the traffic stop in this case was lawful and proper, inasmuch as the police officers initiating the stop had probable cause to believe that defendant had violated the rules of the road. Accordingly, the Motion to Suppress Evidence and Statements (doc. 17) is **denied**.

DONE and ORDERED this 23rd day of August, 2016.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE